## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **Robert Anthony Alvarez**, and **Steven John Robbins**, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**Elon Reeve Musk**, **America PAC**, **Chris Gober** and **Chris Young**,<br><br>Defendants. | No. 1:24-cv-01174-RJJ-MV<br><br>Hon. Robert J. Jonker<br><br>Mag. Maarten Vermaat<br><br>**ORAL ARGUMENT REQUESTED** |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO  FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)

# **TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................... 1

II.    FACTS ................................................................................................... 3

III.   STANDARD OF REVIEW .................................................................... 5

IV.    ARGUMENT ......................................................................................... 6

    A. *Plaintiffs Have Sufficiently Alleged Standing Because They Suffered Concrete Injuries In Fact When They Were Fraudulently Induced Into Disclosing Their Valuable Personal Information* ................................... 6

    B. *Plaintiffs Allege Defendants' Fraudulent Actions with Rule 9(b) Specificity* ................................................................................................ 12

    C. *Plaintiffs More than Sufficiently Allege a Claim for Fraud by Omission Under Michigan Law* ............................................................................... 14

V.     CONCLUSION .................................................................................... 17

# INDEX OF AUTHORITIES

*A.B. v. Google LLC*
  737 F. Supp. 3d 869 (N.D. Cal. 2024) ................................................................ 8

*Allen v. Wenco Mgmt., LLC*
  696 F. Supp. 3d 432 (N.D. Ohio 2023) ............................................................... 8

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ............................................................................................ 5

*Bohnak v. Marsh & McLennan Cos.*
  79 F.4th 276 (2d Cir. 2023) ................................................................................ 8

*Braitberg v. Charter Communications*
  836 F.3d 925 (8th Cir. 2016) ........................................................................ 9, 10

*Brush v. Miami Beach Healthcare Grp. Ltd.*
  238 F. Supp. 3d 1359 (S.D. Fla. 2017) ............................................................ 15

*Clemens v. ExecuPharm Inc.*
  48 F.4th 146 (3d Cir. 2022) ................................................................................ 8

*Clemens v. ExecuPharm, Inc.*
  678 F. Supp. 3d 629 (E.D. Pa. 2023) ............................................................... 15

*Courser v. Michigan House of Representatives*
  404 F. Supp. 3d 1125 (W.D. Mich. 2019) .......................................................... 4

*Deschane v. Klug*
  344 Mich. App. 744 (2022) ..................................................................... 14, 15, 16

*Dewald v Wigglesworth*
  798 F3d (6th Cir 2014) ...................................................................................... 11

*Directv, Inc., v. Treesh*
  487 F.3d 471 (6th Cir. 2007) .............................................................................. 6

*F.A.C.E. Trading, Inc. v. Dep't of Consumer & Indus. Servs.*
  270 Mich. App. 653 (2006) ............................................................................... 15

*Greer v. Strange Honey Farm, LLC*
  114 F.4th 605 (6th Cir. 2024) ........................................................................... 12

*Hancock v. Urban Outfitters*
  830 F.3d 511 (D.C. Cir. 2016) ............................................................................ 9

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*
  603 F.Supp.3d 1183 (S.D. Fla. 2022) ................................................................ 9

*In re Yahoo! Inc. Customer Sec. Data Breach Litig*.
  2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ........................................................ 9

*Keys v. Humana, Inc.*
  684 F.3d 605 (6th Cir. 2012) ................................................................................. 6

*Lujan v. Defenders of Wildlife*
  504 U.S. 555(1992) ................................................................................................. 6

*New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*
  44 F.4th 393 (6th Cir. 2022) ............................................................................... 12

*Roberts v. Saffell*
  280 Mich App 397 (2008) ................................................................................... 14

*Savidge v. Pharm-Save, Inc*.
  727 F. Supp. 3d 661 (W.D. Ky. 2024) .......................................................... 8, 10

*Sproat-Temple Theatre Corp v Colonial Theatrical Enterprise*
  276 Mich. 127 (1936) .......................................................................................... 16

*TransUnion LLC v. Ramirez*
  594 U.S. 413 (2021) ..................................................................................... 6, 7, 8

# **RULES**

Fed. R. Civ. P. 9(b) ................................................................................. 12, 14

FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6) ............. 1, 3

Rule 12(b)(6) ............................................................................................. 4

## I.    INTRODUCTION

This case presents truly extraordinary circumstances. In October 2024, during the height of a hotly contested presidential campaign, at a televised town hall meeting in Pennsylvania, Defendant America PAC, through its principal spokesperson, founder and funder, Defendant Elon Musk, promised to "randomly" give one million ($1,000,000) dollars each day during the remainder of the election campaign, to registered voters in swing states, who signed the America PAC online petition in support of the First and Second Amendments.

Shortly after, Plaintiffs learned of Musk's sweepstake announcement. Both were supporters of the First and Second Amendments. Both were residents of Michigan, a swing state in the election. They agreed to sign the online petition and disclose valuable personal information regarding their address, phone number, and email address based on Defendants' misrepresentation that by providing their personal information they would be entered into an equal opportunity sweepstakes.

However, as Defendants later admitted during a judicial hearing in Philadelphia, the sweepstakes were a farce. The winners of the daily million-dollar prize were *not* selected at random, but rather, were strategically predetermined to ensure that each winner was a supporter of then-candidate Donald Trump and was willing to participate in online speech and behavior in support of Trump.

Thus, Plaintiffs were fraudulently enticed to disclose their valuable, personal information to Defendants, which they would not have provided to Defendants had they known the premise of Defendants' sweepstakes was patently false. Defendants therefore fraudulently obtained valuable personal information which they were able to harness and monetize. Defendants' actions constitute fraud under Michigan law.

Ever the snake oil salesmen, Defendants have since backtracked, now claiming that the widely publicized sweepstake was actually a job application by which Defendants sought spokespersons to promote Donald Trump. Defendants attempt to pull the wool over the eyes of this Court (and other courts in which similar claims are pending), and seek to dismiss Plaintiffs for a number of arguments, each of which fail.

First, Plaintiffs have sufficiently alleged Article III standing because they were fraudulently induced into disclosure of their sensitive information in connection with their signatures on a public petition for the opportunity to enter a "random" lottery which ultimately revealed itself to be *entirely* predetermined and biased. Second, Plaintiffs' allegations satisfy Rule 9(b) particularity because they include the "who" (Defendants), the "what" (fraudulent misrepresentation of a "random" sweepstakes for eligible swing-state voters for the true purpose of obtaining their personal information), the "when" (October 2024 through the November 4, 2024 election), and the "where and how" (in swing states and by

broadcasting and marketing of the "random" million dollar sweepstakes on televised events and social media) of Defendants' fraudulent actions and omissions. Finally, Plaintiffs have sufficiently alleged claims for fraud by omission.  Plaintifs are willing to drop  the Michigan Consumer Protection Act ("MCPA") Section 445.903 claims for the reasons briefed by Defednants.

Accordingly, this Honorable Court should deny the Defendants' Motion to Dismiss under Rule 12(b)(1) and 12(b)(6).

## II.    FACTS

Defendant Elon Musk is the founder, funder, and spokesperson (FAC ¶¶ 12-13) for Defendant America PAC, a political action committee (*Id*. ¶ 14). At a televised town hall in Pennsylvania on October 19, 2024, Musk represented that any registered voter from a swing state (which included both Pennsylvania and Michigan, among others) could become eligible for a one-million-dollar payment, merely by signing a petition in support of the First and Second Amendments. (*Id*. ¶ 18).  In exchange for the chance to win, eligible swing voters were required to submit their personal information to the PAC, including valid address, cell phone number and email address. (*Id*. ¶ 18). According to Musk's October 19th representation, the selection process was to be random. (*Id*. ¶¶ 15; 21). Indeed, the town hall event included a presentation of a million-dollar award to three registered voters, each of whom Defendant represented as having been randomly selected. (*Id*. ¶ 19).

In the days after the town hall event, Defendants presented and marketed that any registered voter from a swing state would become eligible to be selected for future one-million-dollar payments merely by signing the petition. (*Id.* ¶ 20).  To qualify, each signatory had to include valid current contact information, including address, cell phone number and email address. (*Id.*).

Enticed by the chance to win a million dollars, Plaintiffs Alvarez and Robbins, along with other putative class members, signed the petition through Defendants' website.[1] Alvarez signed the petition on October 27 (*Id.* ¶ 26) and Robbins signed on October 21, 2024. (*Id.* ¶ 27). After all, they were registered voters in Michigan, a swing state (*Id.*  ¶ 23-24) who support the First and Second Amendments (*Id.* ¶ 24). They understood that by signing the petition, they would be entered into a random drawing for the chance to win a million dollars. (*Id.* ¶ 28). In doing so, they provided their valuable personal information necessary to complete the process. (*Id.*  ¶¶ 26-27).

However, unbeknownst to the plaintiffs, the selection process was not random. (*Id.* ¶ 28). The specific process of the selection process emerged at a hearing in the Philadelphia Court of Common Pleas on October 28, 2024. (*Id.* ¶¶ 29-35). During that hearing, both Defendants Gober and Young testified that despite Musk's public

---

[1] Defendants improperly attach a copy of a purported "Privacy Policy" to their Response as an exhibit, the contents of which fall outside the FAC. *Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125, 1139 (W.D. Mich. 2019) (noting that "[i]n general, in deciding a Rule 12(b)(6) motion to dismiss the court is limited to considering only the pleadings").

statements on the 19th, and despite the continued promotion of these remarks as being truthful, recipients of the million-dollar payment were not selected at random but instead had been vetted and predetermined.  (*Id*).  Indeed, instead of including a mix of different voters, the recipients of the payment were not randomly selected, but instead were all registered Republicans who had voiced, and were willing to continue to voice, support for Trump. (*Id*. ¶¶ 36-40).

In sum, Plaintiffs were fraudulently induced to disclose their valuable personal information to Defendants, in connection with a public petition signature, under the guise they would have a random and equal opportunity to win a million dollars. (*Id*. ¶¶ 4, 15, 32, 65). Defendants misled Plaintiffs and the public about the random and equitable nature of the purported sweepstakes, inducing Plaintiffs and others to supply Defendants with valuable personal information, which Defendants in turn used to inflate the interest in their petition and numerical support for Donald Trump. (*Id*. ¶¶ 2, 18, 35, 71).

## III.  STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

On a motion to dismiss, "[w]e must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "The defendant has the burden of showing that the plaintiff has failed to state a [plausible] claim for relief." *Directv, Inc., v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

## IV.    ARGUMENT

### A. *Plaintiffs Have Sufficiently Alleged Standing Because They Suffered Concrete Injuries In Fact When They Were Fraudulently Induced Into Disclosing Their Valuable Personal Information.*

Plaintiffs have alleged cognizable harm because they suffered a privacy injury sufficient to support Article III standing when they disclosed their private information in connection with their signature on a public petition in reliance on Defendants' fictitious sweepstake. To establish standing, the "[p]laintiff must show: (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561(1992). Defendant challenges Plaintiffs' First Amended Complaint on all three prongs.

In *TransUnion*, the Supreme Court held, in relevant part, that consumers who brought claims against a credit reporting agency satisfied Article III standing where incorrect credit reports labeling the class members as potential terrorists, drug traffickers, or serious criminals, were disseminated to third parties. *TransUnion LLC,* 594 U.S. at 423. While noting that the most "obvious" concrete injuries are "traditional tangible harms, such as physical harms and monetary harms[,]" the court held that "[v]arious intangible harms can also be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts[,]" including, but not limited to "reputational harms, *disclosure of private information*, and intrusion upon seclusion." 594 U.S. at 425 (emphasis added).

That same logic applied to Plaintiffs with equal force because they have been fraudulently induced into disclosure of their private personal information. Plaintiffs agreed to sign their name to a public petition supporting the First and Second Amendments in exchange for an equal opportunity entry into a million-dollar sweepstakes. Instead, they were fraudulently induced to submit their private information in conjunction with a public petition, which Defendants monetized and publicized "to inflate the numerical support for Musk and PAC's political views, support for the Republican candidate for President and other conservative themes and views." FAC ¶ 71. Defendants used Plaintiffs' and the class's private information

7

to check their information against voting registration records, and to identify and review their social media. *Id*. ¶ 32. Defendant's fraudulent inducement of Plaintiffs' private information in connection with their signature on a public petition constitutes actual and concrete privacy harm.

Following *TransUnion*, a number of courts have found privacy injuries to be sufficiently concrete for Article III standing where they "bear[] some relationship to a well-established common-law analog: public disclosure of private facts." *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 285 (2d Cir. 2023); *Allen v. Wenco Mgmt., LLC*, 696 F. Supp. 3d 432, 437 (N.D. Ohio 2023) (finding a privacy injury was a cognizable harm sufficient to support Article III standing); *Savidge v. Pharm-Save, Inc.*, 727 F. Supp. 3d 661, 681 (W.D. Ky. 2024) ("a plaintiff may satisfy the injury-in-fact requirement if he suffers an actual (i.e., presently occurring) intangible harm, like reputational harm, for which there is a close historical or common-law analog"); *A.B. v. Google LLC*, 737 F. Supp. 3d 869, 875 (N.D. Cal. 2024) ("[p]rivacy harms involving personal data can constitute an injury to money or property sufficient to provide standing."); *see also Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 154-55 (3d Cir. 2022) ("In the data breach context, there are several potential parallels to harms traditionally recognized at common law, depending on the precise theory of injury the plaintiff puts forward."). Unlike the data stored by the defendant in *TransUnion,* which consumers provided in order to complete a commercial transaction for which

they received immediate benefit, the Plaintiffs here supplied their private information only by reason of Defendants' fraudulent "random" lottery for a million dollars.

Moreover, Plaintiffs' private information is irrefutably valuable and was provided at the time when it had the *most* value to Defendants – during the peak of a hotly contested election campaign. *See, e.g., In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.,* 603 F.Supp.3d 1183, 1204 (S.D. Fla. 2022) (ADD); *Rodriguez v. Mena Hosp. Comm'n,* Case No. 2:23-cv-2002[1] (W.D. Ark. Nov 01, 2023) (aligning itself with the "trend of recognizing the lost property value of personal information.") (internal quotation marks omitted); *In re Yahoo! Inc. Customer Sec. Data Breach Litig.*, No. 16-2752, 2017 U.S. Dist. LEXIS 140212, 2017 WL 3727318, at *14 (N.D. Cal. Aug. 30, 2017) (holding that plaintiffs' personally identifiable information was valuable to the defendant where it allegedly used the information for targeted advertising).

Defendants next contend that Plaintiffs' claims are not actionable because the information provided did not include social security numbers. Defs. Mot. at 13-14. For this proposition, Defendants rely primarily on two pre-*TransUnion* cases, *Hancock v. Urban Outfitters*, 830 F.3d 511 (D.C. Cir. 2016) and *Braitberg v. Charter Communications*, 836 F.3d 925 (8th Cir. 2016). Defendants overlook the inapposite facts of both *Hancock* and *Braitberg* to the facts at hand.  In *Hancock*, the sole claim

9

was that Defendant Urban Outfitters had retained its customers zip codes in its database (830 F3d at 925) while in *Braitberg,* the claim was that the Defendant had retained certain customer information longer than permitted by the applicable statue. 836 F3d at 925. In neither case did plaintiffs allege that their private or personal information had been divulged in any way, or that they had suffered any consequences such as loss of privacy in their personal information. Nor did either case involve the fraudulent inducement of private information later used for political capital.

Plaintiffs maintain that they have suffered actual and ongoing privacy harm in the loss of their private information. But even if they were not suffering this ongoing privacy harm, they have alleged imminent harm in the misuse of their personal information because Defendants did not obtain the information for the stated purpose of the random million-dollar lottery. FAC ¶¶ 23-24, 26, 71-72. Imminent risk of harm resulting from misuse of data has been found to support Article III standing. *See Savidge v Pharm-Save,* 727 F. Supp. 3d 661 (W.D. Ky. 2024) (Article III standing was met in data breach case based on demonstration of "a substantial risk that future harm (namely, identity theft or fraud) will occur, sufficient to satisfy the imminence requirement of the injury-in-fact analysis").

The above arguments apply with equal force to the claims alleged against individual Defendants Gober and Young  Gober is identified as the former treasurer

of America PAC, and was associated with the petition drive effort.  (Complaint ¶13)

At the Philadelphia hearing, Gober said, "We know exactly who will be announced

as the $1 million dollar recipient today and tomorrow." (Id at ¶30).  Similarly, Young

is identified as the current director of America PAC. (Id at ¶14).   At that same

Philadelphia hearing, Young set out that despite not informing the public that no

randomness was involved, the PAC was not going to be doing random selections,

and indeed, already knew as of the date of the announcements who the "winners"

were going to be. (Id at ¶31).  Accordingly, Plaintiff has sufficiently identified the

individual defendants Gober and Young as sufficiently on the inside of the fraud that

they cannot be dismissed at this time.

Defendants also raise certain provisions of the Federal Election Commission

Act for the proposition that claims against treasurers are somehow curtailed by the

existence of the Act.  However, Plaintiff has not alleged violations of the FECA in

their complaint.  The fraud alleged arises under the common law.  The Act does not

preempt common law fraud claims.  *Dewald v Wigglesworth*, 798 F3d 295 (6th Cir

2014).

Plaintiffs have alleged a privacy injury sufficient cognizable as an actual harm

for purposes of Article III standing.

B. *Plaintiffs Allege Defendants' Fraudulent Actions with Rule 9(b)*
   *Specificity.*

Where a complaint sounds in fraud, the allegations of fraud must satisfy the heightened pleading requirements of Rule 9(b). Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id*. *See also Greer v. Strange Honey Farm, LLC,* 114 F.4th 605, 614-15 (6th Cir. 2024) (a complaint sounding in fraud "must [](1) specify the statements that the plaintiff contends were fraudulent, (2)  identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.") (citing *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.,* 44 F.4th 393, 411 (6th Cir. 2022)). Plaintiffs' allegations satisfy the Rule 9(b) particularity requirement.

***The "Who."*** The who is Musk, America PAC, Chris Gober, and Chris Young. FAC ¶¶ 1, 9-13, 14-15, 28-1.

***The "What."*** Defendants sought to induce swing-state voters to sign a petition in support of the First and Second Amendments, in conjunction with disclosing valuable personal information under the guise that each eligible swing-state voter who followed this procedure would be entered into a "random" sweepstakes for a million dollars. *Id.* ¶¶ 15, 17-19, 68, 75. Defendants knew that the sweepstakes were not random, but instead all awards would be predetermined to select only individuals

who supported candidate Doanld Trump. *Id.* ¶¶ 26, 28-36. Defendants omitted the true nature of the lottery and concealed the real selection process in order to induce Plaintiffs and the Class to provide their private information. *Id.* ¶¶ 57-58. The real selection process was a predetermine vetting to select vocal supporters of Donald Trump. *Id.* ¶¶ 3, 33, 37, 70. Defendant's fraudulent conduct was intentional, willful, and designed to deceive Plaintiffs and others into participating in their program under false pretenses. *Id.* ¶ 61.

 ***The "When."*** Defendants began their fraudulent marketing of the rigged "sweepstakes" on October 19, 2024, and continued promoting and publicizing it through election day November 5, 2024. *Id.* ¶ 14. Defendants made numerous admissions about the false pretenses of the "sweepstakes" during that same time, as reported by news outlets on November 4, 2024. *Id.* ¶¶ 26-32.

 ***The "Where."*** Defendants broadcasted their false random sweepstakes in swing states nationwide, including Michigan, through their website and by broadcasting and marketing of the "random" million-dollar sweepstakes on videos and through social media. *Id.* ¶¶ 1, 14, 18-19. Defendants later admitted that the premise of the sweepstakes was false and not random during a judicial hearing in the Philadelphia Court of Common Pleas on November 4, 2024. *Id.* ¶ 26.

 ***The "How."*** Defendants used the guise of a random sweepstakes to obtain personal information together with public petition signature, and this information

was used to inflate the numerical support for Musk and PAC's political views, support for the Republican candidate for President and other conservative themes and views. *Id.* ¶¶ 4, 50, 71-72.

Defendants overlook the detailed nature of the FAC allegations, cherry-picking small quotes and framing them as insufficient. Defs. Mot. at 20. But the allegations speak for themselves. The tale of fraud is clearly defined and meets Rule 9(b) specificity.

### C. Plaintiffs More than Sufficiently Allege a Claim for Fraud by Omission Under Michigan Law.

Plaintiffs have sufficiently alleged a claim for silent fraud based on defendants' omission and misrepresentation of the true nature of the so-called "random" lottery. "A fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion of a falsehood, and courts have not hesitated to sustain recoveries where the truth has been suppressed with the intent to defraud." *Deschane v. Klug*, 344 Mich. App. 744, 751 (2022) (quoting *Roberts v. Saffell*, 280 Mich App 397, 403 (2008)). Defendants brazenly suppressed the true nature of the "random" million-dollar contest, and their fraud claim is supported by Michigan law.

Here, Plaintiffs' Complaint is premised upon a legal or equitable duty of disclosure as well as some type of representation by words or actions that was false or misleading and was intended to deceive, as required to establish a claim for fraud

by omission. *See Deschane v. Klug*, 344 Mich. App. at 751. In other words, Defendants had an obligation to disclose the actual terms of the sweepstakes, because they "knew or should have known that their statements and representations were false, misleading and that individuals such as Plaintiffs would rely on those misrepresentations to sign the petition." FAC ¶ 62. Defendants instead collected Plaintiffs' private information and "concealed the true nature of the opportunity, method in which the winners would be selected and the terms/conditions under which Plaintiffs, if selected, would be awarded the $1 million." *Id*. ¶ 60. To be sure, entities that collect private information and sensitive data from individuals have a duty to the individuals from whom they collect that data. *See e.g.*, *Clemens v. ExecuPharm, Inc.*, 678 F. Supp. 3d 629, 636 (E.D. Pa. 2023) (finding that Pennsylvania law recognizes a duty to exercise reasonable care in collecting and storing personal information); *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1365 (S.D. Fla. 2017) ("It is well-established that entities that collect sensitive, private data from consumers and store that data on their networks have a duty to protect that information.").

Moreover, Defendants were prohibited from operating an illegal lottery in violation of MCLS § 750.372, which prohibits any person from "[s]et[ting] up or promot[ing] within this state any lottery or gift enterprise for money." The essential elements of a lottery are "consideration, prize and chance." *F.A.C.E. Trading, Inc. v.*

*Dep't of Consumer & Indus. Servs*., 270 Mich. App. 653, 667 (2006) (quoting *Sproat-Temple Theatre Corp v Colonial Theatrical Enterprise, Inc*, 276 Mich. 127, 129 (1936)). Defendants promoted an illegal lottery because they marketed the sweepstakes as "random," offered a prize of $1 million dollars, and sought valuable consideration in the form of Plaintiffs' personal information.

Quite frankly, this case presents facts never before examined by a court. Whether Defendants had a legal duty to truthfully disclose the terms of the alleged "random" lottery when collecting Plaintiffs' and the Class's private information is perhaps an issue of fact not appropriate for testing upon the initial pleadings. While Defendants cite a plethora of Michigan law on legal duties, they cannot point to a single analogous case in which a political action committee run by its spokesperson and founder fraudulently induced voters to sign a petition and disclose their private information.

Finally, Plaintiffs plainly allege "some type of representation by words or actions that was false or misleading and was intended to deceive." *See Deschane v. Klug*, 344 Mich. App. at 751. Defendants made patently false representations about the eligibility requirements and the "random" nature of the sweepstake and then admitted to their untruths. FAC ¶¶ 3, 15, 17-19, 26, 28-37, 57-58 68, 70, 75. Defendant's fraudulent conduct was intentional, willful, and designed to deceive Plaintiffs and others into disclosure under false pretenses. *Id.* ¶ 61.

16

As a last-ditch effort, Defendants take aim at Plaintiffs' fraud by omission claim by asserting that Plaintiffs did not suffer damages. As discussed in Section A supra, Defendants are wrong. Plaintiffs suffered a loss of privacy because they were fraudulently induced into making a disclosure of private information in connection with a public petition signature. Defendants' argument fails.

## V.    CONCLUSION

For all the above reasons, Defendants' Motion should be denied, other than the MCPA claim which Plaintiffs withdraw. If the Court is inclined to grant any part of Defendants' Motion, Plaintiffs respectfully request leave to amend and such other and further relief as this Court deems appropriate.

Dated: February 24, 2025

Jason J. Thompson (P47184)
Kevin J. Stoops (P64371)
David R. Parker (P39024)
Sommers Schwartz, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
(248) 355-0300
jthompson@sommerspc.com
kstoops@sommerspc.com
dparker@sommerspc.com

Elizabeth A. Fegan (PHV)
Megan E. Shannon (PHV)
150 South Wacker Drive, 24th Floor
Chicago, Illinois 60606
(312) 741-1019
beth@feganscott.com
megan@feganscott.com

*Attorneys for Plaintiffs and Class*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on, I electronically filed the forgoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jason J. Thompson*
Jason J. Thompson (P47184)
jthompson@sommerspc.com