UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT ANTHONY ALVAREZ, et al.,

      Plaintiffs,

                                      Case No. 1:24-cv-1174

v.

                                      Hon. Robert J. Jonker

ELON REEVE MUSK, et al.,

      Defendants.

_____/

## OPINION AND ORDER

Plaintiffs Robert Alvarez and Steven Robbins, on behalf of themselves and others similarly situated, have filed a two-count complaint against Defendants Elon Musk, America PAC, Chris Gober, and Chris Young, alleging fraud by omission and violation of Michigan's Consumer Protection Act.  (Am. Compl., ECF No. 7.)  Defendants have filed a motion to dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (ECF No. 18).  The Court **GRANTS** the motion for the following reasons.

## I. BACKGROUND

America PAC is a political action committee that Musk founded to support Republican candidates for the 2024 election.  (*See* Am. Compl. ¶¶ 9, 11.)  Gober is the former treasurer of America PAC.  (*Id.* ¶ 12.)  Young is the current director and treasurer of America PAC.  (*Id.* ¶ 13.)

During a Pennsylvania town hall on October 19, 2024, Musk and America PAC announced an opportunity for registered voters in battleground states to win $1,000,000.00.  (*Id.* ¶¶ 14–15.)  To qualify for a chance at the money, qualified voters had to sign a petition, which included a pledge to support the First and Second Amendments of the United States Constitution.  (*Id.* ¶ 15.)  The petition also required voters to list their telephone number, email address, and residential

address.  Only then would voters living in an identified swing state have a chance at the money.  During the town hall, Musk specifically stated: "[w]e really want to get as many people as possible to sign this petition, so I have a surprise for you.  And it's that we'll be awarding [$1,000,000.00], randomly, to people who have signed the petition.  Every day from now until the [2024 presidential] election."  (*Id.* ¶ 18.)  This was 17 days before the election, giving 17 people in the class of all eligible signers a chance at the money.

Plaintiffs claim that because Musk said the money would be awarded "randomly," they believed everyone who signed and qualified would have an equal chance to win by random selection.  But despite Musk's statements on October 19, 2024, the selections were not random.  (*Id.* ¶ 33.)  During a hearing before a state court on November 4, 2024, Defendants explained that they sifted through the pool of individuals who submitted a petition and "determine[d] [who] would serve as an effective spokesperson" for the PAC.  (*Id.* ¶ 29.)  Defendants selected spokespersons based on their "personal stories or backgrounds," geography (proximity to upcoming PAC townhalls), social media presence, and personality.  (*Id.* ¶¶ 28, 32.)  Defendants "preselected" and "vetted" each spokesperson before announcing them as the winner at the town hall.  (*Id.* ¶ 31.)  According to Plaintiffs, all those awarded the money were registered Republicans or "publicly espoused support for the [Republican] party."  (*Id.* ¶ 36.)

The named Plaintiffs are Michigan residents who were registered to vote for the 2024 election.  (*Id.* ¶¶ 7–8.)  One plaintiff identifies with the Democratic party and the other identifies with the Republican party.  Plaintiffs allege that they filled out the petition, provided their telephone number, email address, and residential address, and pledged their support to the First and Second Amendments.  (*Id.* ¶¶ 22–24, 68.)  Defendants did not select either of them as a

spokesperson for America PAC; consequently, neither received $1,000,000.00 from America PAC.  (*Id.* ¶¶ 45, 68.)

Plaintiffs now bring this action against Defendants.  They characterize Defendants' petition program as a "sweepstakes," alleging that they believed based on Defendants representations that the $1,000,000.00 was awarded by random chance.  (*Id.* ¶ 17.)  Because it is now clear that the money was not awarded by random chance, Plaintiffs claim that Defendants committed fraud by omission and violated Michigan's Consumer Protection Act to obtain Plaintiffs' "valuable personal information."  (*Id.* ¶¶ 56–73, 75–80.)  Defendants move to dismiss Plaintiffs' complaint under Rules 12(b)(1) and 12(b)(6).

## II. LEGAL STANDARD

Dismissing a complaint under Rule 12(b)(1) is proper when the Court determines it lacks subject matter jurisdiction, including when a plaintiff lacks standing.  *Ward v. Alt. Health Delivery Sys., Inc.*, 261 F.3d 624, 626 (6th Cir. 2001).  "[C]hallenges to standing are properly brought under Fed. R. Civ. P. 12(b)(1) for a lack of subject matter jurisdiction."  *Miller v. Collins*, No. 23-3191, 2023 WL 7303305, at *2 (6th Cir. Nov. 6, 2023) (citing *Tenn. Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019)).  And when a defendant challenges the Court's jurisdiction under 12(b)(1), "the plaintiff has the burden of proving jurisdiction . . . to survive the motion."  *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)).

A challenge to the Court's subject matter jurisdiction under Rule 12(b)(1) can be factual or facial.  *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  "A facial attack merely questions the sufficiency of the pleading."  *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012).  "When ruling on a motion to dismiss for lack of standing or a facial challenge . . . the district court must accept all material allegations of the complaint as true."

*Phillips v. Trump*, No. 18-6341, 2019 WL 7372704, at *1 (6th Cir. Nov. 20, 2019).  "On the other hand, when a court reviews . . . a factual attack . . . no presumptive truthfulness applies to the factual allegations. . . ."  *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325.

Dismissing a complaint under Rule 12(b)(6) is proper when the Court determines that the plaintiff's complaint fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  In determining whether a claim has facial plausibility a court must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III. ANALYSIS

When faced with a motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6), the Court must consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if [the] court lacks subject matter jurisdiction."  *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).  Defendants move to dismiss under Rule 12(b)(1) on the grounds that Plaintiffs' lack standing.  The Court agrees.

Article III of the Constitution limits the jurisdiction of federal courts to "cases and controversies."  U.S. Const. art. 3, § 2.  "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy the "irreducible constitutional minimum of standing," the plaintiff must establish the following:

4

> (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent rather than conjectural or hypothetical; (2) that there is a causal connection between the injury and the defendant's alleged wrongdoing; and (3) that the injury can likely be redressed.

*Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017) (citing *Lujan*, 504 U.S. at 560–61). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 578 U.S. at 338 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). But Defendants say that Plaintiffs' complaint allegations do not demonstrate that they suffered an injury in fact.

To establish standing, a plaintiff must show a concrete and particularized, actual past or imminent future injury. *Spokeo*, 578 U.S. at 339. "[C]ertain harms readily qualify as concrete injuries under Article III." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). "The most obvious are traditional tangible harms, such as physical harms and monetary harms." *Id.* Various intangible harms can also satisfy this requirement, but only if they have a "'close relationship' to harms 'traditionally' recognized as providing a basis for lawsuits in American courts." *Id.* (quoting *Spokeo*, 578 U.S. at 340).[1] The harm must be particularized, too, meaning that "the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. If a plaintiff has yet to suffer a tangible or intangible harm, he must show that such harm is "certainly impending, or there is a substantial risk that the harm will occur." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5, 415 (2013).

To start, Plaintiffs do not allege that they suffered a tangible harm, economic or otherwise. Defendants did not require Plaintiffs to donate to the America PAC or purchase a subscription to submit their petitions. *Cf. Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125 (11th Cir. 2019)

---

[1]    In other words, there must be a "close historical or common-law analogue for [the] asserted injury." *TransUnion LLC*, 594 U.S. at 414.

(finding injury in fact when plaintiffs alleged that they suffered a financial loss from monetary donations); *Van v. LLR*, *Inc.*, 962 F.3d 1160, 1162 (9th Cir. 2020) (finding that even a loss of $3.76 is enough to satisfy injury in fact prong).  And Plaintiffs do not expressly allege that Defendants' actions wasted their time, though it is unlikely that the Court would find such a minor annoyance to constitute a sufficient injury-in-fact in any event.  *See Tsao v. Captiva MVP Rest. Partners, LLC,* 986 F.3d 1332 (11th Cir. 2021) ("Tangible injuries can include both straightforward economic injuries and more nebulous injuries, like lost time . . . ."); *but see Salcedo v. Hanna*, 936 F.3d 1162, 1172 (11th Cir. 2019) (holding that claims of wasted time that constitute a "brief, inconsequential annoyance" cannot "invoke the jurisdiction of the federal courts"); *Colceriu v. Barbary*, 543 F. Supp. 3d 1277, 1281 (M.D. Fla. 2021) (finding that a social media user failed to allege an injury in fact in lawsuit against defendant whose social media giveaway required her to follow upwards of sixty profiles to enter).  Instead, Plaintiffs' claim that they suffered an intangible privacy harm.

Specifically, Plaintiffs allege that they disclosed their phone numbers, email addresses, and residential addresses to Defendants under false pretenses, believing that they would have an equal and random chance at $1,000,000.00.  Plaintiffs argue that the initial disclosure of their information constitutes an actual past injury, and that the potential for misuse of their personal information constitutes an imminent future injury.  (ECF No. 20, PageID.165).  In asserting that this intangible harm bears a sufficiently "close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts", Plaintiffs rely on cases involving misleading credit reports and data breaches.  *TransUnion LLC,* 594 U.S. 413 (concerning a credit reporting agency's alleged disclosure of misleading credit reports to a third party); *Clemens v. ExecuPharm Inc.*, 48 F.4th 146 (3d Cir. 2022) (concerning a former employer's failure to protect sensitive

personal information that was obtained by hackers and published to the dark web).  Those cases in turn relied on reputational harms,[2] *TransUnion LLC*, 594 U.S. at 432, and the public disclosure of private fact,[3] *Clemens*, 48 F.4th at 155 n.5, as common law analogues for the alleged injuries.

As an initial matter, the Court is not persuaded by Plaintiffs assertion of an actual past injury.  Plaintiffs allege that Defendants' representations, or misrepresentations, confused Plaintiffs into believing that they had as good a shot at receiving $1,000,000.00 as anyone who signed Defendants' petition.  To be sure, there are circumstances under which courts construe "the dissemination of misleading information" as a "species of informational harm" sufficient to confer Article III standing.  *See, e.g.*, *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 143 (3d Cir. 2023).  But even under those circumstances, the intangible harm must be concrete; "confusion itself is not enough." *Id.*  And the mere fact that Plaintiffs provided Defendants with their personal information based on their confusion does not alter the Court's analysis; Plaintiffs concede that they held the views represented by the petition, and they provide nothing more than conclusory allegations that Defendants misused their personal information.  (*See, e.g.*, ECF No. 20, PageID.157 ("Defendants therefore fraudulently obtained valuable personal information which they were able to harness and monetize.")).  Turning then to Plaintiffs' arguments regarding imminent future injury, the Court observes that the arguments are undermined by the very cases that Plaintiffs cite in their brief.

---

[2]     Such as defamation, involving: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."  Restatement (Second) of Torts § 558.

[3]     As to this tort, "[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not a legitimate concern to the public."  Restatement (Second) of Torts § 652D.

In *TransUnion LLC*, a class of 8,185 people sued TransUnion after the credit reporting agency generated misleading credit reports reflecting that the class members were a "potential match" to an official list of citizens posing a threat to national security.[4]  594 U.S. at 417.  At the time of filing, TransUnion had disclosed only 1,853 of the misleading reports to third parties.  *Id.* The remaining class members argued that the risk of future disclosure rose to the level of an injury in fact.  *Id.* at 435.  The Court disagreed, noting that the plaintiffs' claims against TransUnion were claims for damages as opposed to claims for injunctive relief aimed at preventing the disclosure of the misleading credit reports.  *Id.* at 435–36.  And whether those reports would be disclosed and what damages would flow therefrom was entirely speculative; the plaintiffs did not allege a serious likelihood of disclosure sufficient to establish a concrete injury.  *Id.* at 437–38.

In *Clemens*, the plaintiff sued her former employer after a hacker broke into the employer's database and stole its employees' "social security numbers, dates of birth, full names, home addresses, taxpayer identification numbers, banking information, credit card numbers, driver's license numbers, sensitive tax forms, and passport numbers."  *Clemens*, 48 F.4th 146.  The hacker then held the information for ransom and published it on the dark web.  *Id.* at 150.  The plaintiff sued her former employer for failing to "take appropriate measures to protect the confidentiality and security" of the information, as required by their employment agreement.  *Id.*  The court found that the plaintiff had alleged numerous concrete injuries where it was substantially likely that the information would be used to steal the plaintiff's identity, and the plaintiff had taken measures to prevent identity theft, including by purchasing credit monitoring services.  *Id.* at 157–58; *see also Galaria v. Nationwide Mutual Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016) (Plaintiffs'

---

[4]    Specifically, the list generated by the U.S. Treasury Department's Office of Foreign Assets Control.

allegations of a substantial risk of harm, coupled with reasonably incurred mitigation costs, are sufficient to establish a cognizable Article III injury at the pleading stage of the litigation."); *cf. Tsao*, 986 F.3d at 1343 (finding that plaintiff's allegations that hackers may have accessed and stolen his credit card data during a breach was insufficient to establish a concrete injury).

In contrast to *Clemens*, Plaintiffs claims involve the disclosure of basic contact information. Although the Court acknowledges that a historical or common law analogue need not be a perfect fit to support an intangible injury, such basic information is "available through ordinary inquiry and observation." *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049–50 (N.D. Cal. 2022); *see also Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220 (N.D. Cal. 2022) (finding that the exposure of names, addresses, and driver's license numbers was not enough to state an injury in fact); *Brignola v. Home Props., L.P.*, No. 10-3884, 2013 WL 1795336, at *12 (E.D. Pa. Apr. 26, 2013) (finding plaintiff's name, address, and phone number were not private facts); Restatement (Second) of Torts § 652D, Comment b ("There is no liability for giving publicity to facts about the plaintiff's life that are matters of public record, such as the date of his birth." ). It is not the kind of information that, in the wrong hands, poses a serious risk of identity theft. Moreover, Plaintiffs do not allege a substantial likelihood that their information will be placed in the wrong hands. Like the class members who lacked standing in *TransUnion*, Plaintiffs speculate as to the potential disclosure of their personal information,[5] and request damages for

---

[5]    Indeed, when Plaintiffs submitted their personal information along with their petition, Defendants' website provided the following privacy notice:

> America PAC values your privacy and trues. Personal Identifying Information collected via the www.americapac.org will only be used to support America PAC's activities, and it will not be shared with any advertisers, political organizations, or third parties not directly affiliated with America PAC.

(ECF No. 19-2, PageID.144).

injuries that may well never occur.  (ECF No. 7, PageID.45 (asking the Court to "[a]ward Plaintiffs exemplary damages in an amount sufficient to compensate him [sic] for exploitation of his personal information")).

Ultimately, Defendant America PAC is a political action committee—that much is revealed by its very name.  Regardless of how Plaintiffs characterize its campaign tactics for the 2024 presidential election, Plaintiffs' reported confusion concerning those tactics paired with Plaintiffs' disclosure of basic contact information does not amount to a concrete and particularized injury. Without such an injury, Plaintiffs lack standing to pursue their claims in this Court.  The Court therefore grants Defendants' motion to dismiss for lack of jurisdiction.  As such, the Court need not consider Defendants' alternative grounds for dismissal.

## IV. CONCLUSION

**IT IS ORDERED** that Defendants' motion to dismiss for lack of subject matter jurisdiction (ECF No. 18) is **GRANTED**.


Dated: June 2, 2025                          /s/ Robert J. Jonker
                                             ROBERT J. JONKER
                                             UNITED STATES DISTRICT JUDGE